UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------- X

SPIRIDON ARGYROS, individually and on behalf of a
class of all others similarly situated

**COMPLAINT**

**CV 13**

13 Civ. No.

**2946**

Plaintiffs,

**JURY TRIAL DEMANDED**

-against-

**ECF CASE**

THE CITY OF NEW YORK, POLICE OFFICER
DANIEL FODY, shield no. 08352, POLICE
OFFICERS JOHN DOE and JANE ROE (names and
number of whom are unknown at present) and other
unidentified members of the New York City Police
Department

**LEVY, M.J.**

Defendants.
--------------------------------------------------------------------- X

FILED IN CLERK'S OFFICE
2013 MAY 20 AM 10: 14

Plaintiff Spiridon Argyros, individually and on behalf of others similarly situated,

by his attorneys Siegel Teitelbaum & Evans, LLP, Cutler & Parlatore, PLLC, and McLaughlin &

Stern, LLP, as and for their Complaint allege as follows:

## PRELIMINARY STATEMENT

1.      This is a civil rights class action that challenges the constitutionality of a

widespread and ongoing New York City Police Department ("NYPD") operation known as

"Operation Lucky Bag," which entraps its victims, presumes their guilt and results in their

unlawful arrest and detention. Operation Lucky Bag is a policy and practice of the NYPD in

which police officers intentionally place a bag that contains a valuable item such as a wallet or

laptop in a public place, and lay in wait, often out of sight, until someone picks up the bag and/or

1

removes or attempts to remove the valuable. The police then arrest the person, presuming s/he intends to retain the valuable, rather than to return the property to the rightful owner or turn it in to the proper authority. Though the policy and practice is purportedly intended to catch thieves and deter crime, it is overbroad and treats honest individuals acting as good Samaritans as criminals.

2.      On May 29, 2012 Plaintiff Spiridon Argyros noticed an unattended backpack on a sidewalk. He picked up the bag, saw a wallet sticking out of its pocket, and placed the wallet in a plastic bag—all with the intent of bringing the items back to his apartment and identifying their rightful owner. He was falsely arrested and charged with petit larceny, and held in police custody for approximately four hours. Plaintiff Argyros brings this suit on his own behalf, and on behalf of a class of similarly situated individuals who have picked up a bag intentionally left by the police as bait and been falsely arrested and falsely imprisoned pursuant to Operation Lucky Bag.

3.      Defendants' policy and practice violated Plaintiff's and the class members' rights as secured by the Fourth and Fourteenth Amendments to the Constitution of the United States, 42 U.S.C. § 1983, and New York State's Constitution; it also violated Plaintiff Argyros's rights as secured by laws of the State of New York. Plaintiff seeks class certification, monetary damages, a declaratory judgment and injunctive relief.

### JURISDICTION AND VENUE

4.      This action is brought pursuant to 42 U.S.C §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the Constitution of the United States. This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4) as this is a civil action arising under the Constitution of the United States and the laws of the United States.

2

This Court has jurisdiction to declare the rights of the parties and to grant all further relief deemed necessary and proper pursuant to 28 U.S.C. §§ 2201 and 2202. This Court has jurisdiction over the supplemental claims arising under New York State law pursuant to 28 U.S.C. § 1367(a).

5.    Venue is proper for the United Stated District Court for the Eastern District of New York pursuant to 28 U.S.C § 1391 (a), (b), and (c) because the claims arose within this district.

## PARTIES

6.    Plaintiff Spiridon Argyros is a citizen of the United States and was at all relevant times a resident of the Queens County, State of New York.

7.    Defendant City of New York ("City") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

8.    Police Officer Daniel Fody, shield no. 08352, is and was at all relevant times an employee and agent of the NYPD. On the date Mr. Argyros was arrested Officer Fody was assigned to the 109th precinct. Officer Fody is being sued in his official and individual capacities.

9.    Defendants John Doe and Jane Roe *et al.*, whose identities and number are presently unknown to Plaintiff, are and were at all relevant times officers, employees and/or agents of the NYPD. They are sued in their official and individual capacities.

10.    At all relevant times, the individual defendants Officer Fody, and John

3

Doe and Jane Roe *et al.* acted under color of state law in the course and scope of their duties and functions as officers, employees, servants and/or agents of the NYPD, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties.

## CLASS ACTION ALLEGATIONS

11.     Plaintiff brings this class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2) seeking declaratory and injunctive relief on behalf of a class (the "Class") of all individuals who have picked up a bag and/or removed or attempted to remove the valuable item inside the bag and then been falsely arrested and falsely imprisoned under the NYPD's Operation Lucky Bag between May 16, 2010 and the date on which the City is enjoined from or otherwise ceases enforcing it's unconstitutional policy and practice. Plaintiff also brings this class action on behalf of the Class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) or (c)(4) seeking monetary damages and other make-whole relief.

12.     The members of the Class are so numerous as to render joinder impracticable. Upon information and belief, based on news articles, the challenged policy and practice resulted in at least 34 arrests within Central Park alone between March and June of 2011. There have also been arrests pursuant to the policy and practice in other locations in New York City, including streets in Manhattan and Queens. Upon information and belief, at least 220 arrests were made between February 2006 and November 2007 under a prior iteration of the policy and practice.

13.     Upon information and belief, joinder is also impracticable because many potential Class members are not aware that the City's policy and practice violates their constitutional rights. Further putative Class members are unknown and, therefore, cannot

4

practically be joined individually. There is no appropriate avenue for the protection of these potential Class members' constitutional rights other than a class action.

14.     There are questions of law and fact common to the Class. They include (a) whether the NYPD has a policy and practice of leaving an unattended bag that contains valuables in a public place and then arresting the person that picks up the bag and/or removes or attempts to remove the valuable item in the bag, (b) whether this policy and practice violates Class members' rights under the Fourth and Fourteenth Amendments to the Constitution of the United States and Article I, Section 12 of the New York State Constitution, and (c) whether the City has failed to adequately train, supervise, and/or discipline NYPD officers in connection with Operation Lucky Bag.

15.     The claims of the named plaintiff are typical of the Class he seeks to represent, as they allege violations related to the existence and implementation of Operation Lucky Bag, the City's unlawful policy and practice.

16.     The named plaintiff is an adequate representative of the Class. The violations of law that the named plaintiff alleges stem from the same course of conduct by Defendants that violated and continues to violate the rights of the Class members; the legal theory under which the named plaintiff seeks relief is the same or similar to that on which the Class will rely. In addition, the harm suffered by the named plaintiff is typical of the harm suffered by absent Class members.

17.     The named plaintiff has the requisite personal interest in the outcome of this action and will fairly and adequately represent the interests of the Class. Counsel for Plaintiffs knows of no conflicts among members of the Class.

18.     Class certification is appropriate pursuant to Federal Rule of Civil

Procedure 23(b)(2) because City has acted and/or refused to act on grounds generally applicable to the Class by, *inter alia,* falsely arresting and falsely imprisoning Class members pursuant to Operation Lucky Bag and by failing to adequately train, supervise, and/or discipline NYPD officers in connection with Operation Lucky Bag, thereby making appropriate declaratory and injunctive relief with respect to the named plaintiff and the Class as a whole. The Class members are entitled to injunctive relief to end the City's unconstitutional policy and practice.

19. Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the Class and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

20. The common questions of fact and law that predominate over any individual questions include those identified in paragraph 14 above.

21. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because (a) the prosecution of hundreds of separate actions would be inefficient and a waste of legal and judicial resources; (b) the members of the Class may be scattered throughout New York City and are not likely to be able to vindicate their constitutional rights unless this action is maintained as a class; (c) the issues raised can be more fairly and efficiently resolved in the context of a single class action than piecemeal through many separate actions; (d) the resolution of litigation in a single forum will avoid the danger and resultant confusion of possible inconsistent determinations; (e) the prosecution of separate actions would create the risk of inconsistent or varying adjudications with respect to individuals pursuing claims against the defendants which would establish incompatible standards of conduct for defendants; (f) the City has acted and continues to act on grounds applicable to all Class

6

members, making final declaratory and injunctive relief on behalf of all members necessary and appropriate; and (g) questions of law and/or fact common to members of the Class, especially on issues of liability, predominate over any questions that affect individual members.

22. Alternatively, the named plaintiff seeks to maintain this action as a class pursuant to Federal Rule of Civil Procedure 23(c)(4), seeking partial certification of the common questions of law and fact.

23. Counsel for Plaintiff have been involved in numerous federal court cases brought pursuant to 42 U.S.C. 1983 and the Fourth and Fourteenth Amendments to the Constitution of the United States and have experience with class actions.

## STATEMENT OF FACTS

**Operation Lucky Bag**

24. Operation Lucky Bag is a policy and practice of the NYPD of leaving an unattended bag that contain a valuable item—such as a wallet, cash, cell phone, or credit card— in a public place, and arresting persons who pick up the bag and/or remove or attempt to remove the valuable.

25. Operation Lucky Bag is overly broad and results in the arrest and detention of persons who intend to return the property to the rightful owner. In operation, the program presumes, without basis, that anyone who picks up the bag and/ or removes or attempts to remove its contents intends to steal the valuable item, rather than return it.

26. Upon information and belief, the public locations where the NYPD has left the bags with valuables pursuant to Operation Lucky Bag include subway platforms, department stores, sidewalks, and Central Park.

27. According to the New York Times, in 2007 an earlier version of the

7

program was "effectively shut down by prosecutors and judges" who were concerned that the program was ensnaring good Samaritans in addition to those who intended to commit a crime or misdemeanor.

28.     Upon information and belief, the policy and practice resulted in 34 arrests within Central Park alone between March and June of 2011. Also, upon information and belief, under a prior iteration of the program, there were at least 220 arrests between February 2006 and November 2007.

29.     Personal Property Law § 252 requires that any person who finds or comes into possession of lost property that has a value of $20 or more must either return the property to the owner, or report the finding and deposit the property with the proper authority within 10 days.

30.     New York City Administrative Code § 10-106(a) states that "Any person who finds any lost money or property of or exceeding the value of ten dollars shall report such finding to and deposit such money or property in a police station within ten days after the finding thereof."

31.     Operation Lucky Bag conflicts with Personal Property Law § 252 and New York City Administrative Code § 10-106(a), since the policy requires that police officers arrest and detain the person soon after s/he picks up the bag and/ or removes or attempts to remove the valuable, rather than provide the person with the 10 day grace period that the law permits.

32.     In the only two reported cases, courts dismissed the charges against those arrested pursuant to Operation Lucky Bag.

33.     One of the courts stated that Operation Lucky Bag "may . . . be in

conflict" with Personal Property Law § 252. The other stated that prosecuting a person pursuant to this policy is "inconsistent" with Personal Property Law § 252 and New York City Administrative Code § 10-106(a).

34.     Both courts also characterized the program as "an unfair enticement to commit crime."

35.     A memorandum from S. Andrew Schaffer, the NYPD's Deputy Commissioner, Legal Matters to the Chief of Patrol (the "Deputy Commissioner's Memorandum"), dated January 30, 2012—after the proposed class period has begun— stated that the way the NYPD conducted Operation Lucky Bag was illegal. A true and correct copy of the Deputy Commissioner's Memorandum is attached as Exhibit A. This memorandum stated:

> In the past, Operation Lucky Bag has often been conducted in such a way that a wallet, or a bag with an expensive item, such as a laptop, was left in a public place. Officers in a marked police car or uniformed officers on foot were posted nearby. If an individual picked up the item and walked past the police without turning the item over to the officers, the individual would be arrested and charged with petit larceny under the theory that the individual committed larceny by acquiring lost property. <u>A review of existing law shows that this method of conducing Lucky Bag operations is not sufficient to establish that the perpetrator actually had the intent to commit a larceny.</u>

(emphasis added). The Deputy Commissioner's Memorandum later reiterated that:

> Simply leaving property in a public place and arresting a person who picks it up if they do not immediately notify the police is in contravention of New York State law and does not establish that the person had the intent to commit a larceny. The Department should not conduct Lucky Bag operations of this nature.

36.     Accordingly, the Deputy Commissioner's Memorandum proposed certain changes to the program. For example, the memorandum recommended that the NYPD members arrest people after they observe them "remove the valuable portion of the property, such as the

cash or credit cards in a wallet, and discard the rest of it." It also recommended that the NYPD "have a person in civilian clothes approach the person who picks up the property and state that they lost the property. They would then ask the perpetrator if they have seen it." It recommends the NYPD can arrest the perpetrator if she or he denies having seen the property.

37.     The City has failed to adequately train and supervise its officials, employees and agents, including Officer Fody and John Doe and Jane Roe *et al.*, so as to prevent the false arrest and false imprisonment of the Class members, which has resulted in the violation of the Fourth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983, and the Constitution and laws of New York State. Upon information and belief, during the proposed class period, NYPD members were conducting Operation Lucky Bag without any formal training in how to conduct the operation.

38.     The City's failure to train and supervise amounts to deliberate indifference to the rights of persons with whom NYPD personnel came into contact, including the Plaintiff and the Class members.

39.     The deficiency in the training and supervision of Defendants Officer Fody and John Doe and and Jane Roe *et al.* was an actual cause of the deprivation of the Plaintiff and the Class members' rights and injuries.

**Plaintiff Spiridon Argyros**

40.     On or about May 29, 2012, at approximately 5 pm, on the corner of Flushing and Main Streets in Queens, New York, Mr. Argyros saw a backpack left on the sidewalk, leaning against the wall of an AT&T Wireless store. After some time, he walked over, picked up the backpack, and saw a wallet sticking out from its side pocket. Without ever opening the backpack or the wallet, he placed the wallet into a plastic bag. He kept both the

10

backpack and the plastic bag with the wallet. His intent was to bring the items to his house in the hope that he would identify the rightful owner and determine how to return the backpack and wallet to him or her.

41.     Mr. Argyros was standing holding the backpack and the plastic bag that contained the wallet and took a step forward when 4 or 5 under-cover members of the NYPD rushed towards him and identified themselves with their badges.

42.     In response to the NYPD members' inquiries, Mr. Argyros explained that he saw the bag leaning against the wall of the AT&T Wireless store and intended to bring the wallet and backpack back to his apartment in the hope of identifying their owner in order to return the property.

43.     Nonetheless, Mr. Argyros was handcuffed and arrested without probable cause.

44.     Police Officer Daniel Fody, shield no. 08352, was one of the NYPD members who observed Mr. Argyros remove the wallet from the backpack and arrested him.

45.     The arrest of Mr. Argyros on May 29, 2012 occurred after the Deputy Commissioner's Memorandum was issued on January 30, 2012. The NYPD officers who arrested Mr. Argyros acted in a manner that the memo characterized as illegal. Moreover, the arrest was in contravention of the recommendations in that memorandum.

46.     He was taken to the 109th Precinct and held in police custody, all of which lasted approximately 4 hours.

47.     On August 9, 2012, the case against Mr. Argyros was favorably terminated to him when it was dismissed by a Judge of the Criminal Court of the City of New York, at the recommendation of the Queens County District Attorney's office.

48.     Defendants' conduct caused pain and suffering and psychological and emotional harm to Mr. Argyros. Their actions constituted outrageous and reckless conduct, and demonstrated a callous indifference to and willful disregard of Plaintiff's and other Class members' federal and state constitutional rights.

49.     As long as Operation Lucky Bag remains in existence, there is a likelihood that Mr. Argyros will be harmed in the future by the policy and practice. As the manager at the Gemini Diner in Manhattan for almost 14 years he constantly finds items—such as watches, cell phones and wallets— that customers accidentally left behind. If it is possible to contact the person to let him or her know about the property, Mr. Argyros promptly does this each time; if it is not possible to contact the person, Mr. Argyros keeps the property safe for the person to reclaim it. If Mr. Argyros saw another bag on the street in the future, he would look to the contents to try to return it to its rightful owner, as would other good Samaritans.

50.     On August 21, 2012, a notice of claim was served on the Comptroller of the City of New York. At least 30 days have elapsed since service of such notice, and adjustment and/or payment has been neglected and/or refused.

51.     A 50-h hearing was held on April 24, 2013.

52.     In taking the actions described above, the Defendants were acting under color of state law as aforesaid.

### FIRST CLAIM FOR RELIEF

**(Violation of the Fourth and Fourteenth Amendments to the US Constitution)**
**(On Behalf of Plaintiff Argyros and the Class)**

53.     Plaintiff repeats and realleges each and every allegation set forth above.

54.     Defendants, who were acting in concert and within the scope of their authority, arrested and caused Plaintiff Argyros and the Class members to be imprisoned without

12

probable cause in violation of their right to be free of an unreasonable seizure under the Fourth Amendment to the Constitution of the United States and to be free of deprivation of liberty under the Fourteenth Amendment to the Constitution of the United States.

## SECOND CLAIM FOR RELIEF

### (Violation of Article I, Section 12 of the New York State Constitution)
### (On Behalf of Plaintiff Argyros and the Class)

55.     Plaintiff repeats and realleges each and every allegation set forth above.

56.     City's policy and practice violates Plaintiff Argyros's and the Class members' rights under Article 1, Section 12 of the New York State Constitution.

## THIRD CLAIM FOR RELIEF

### (Inadequate Supervision and Training)
### (On Behalf of Plaintiff Argyros and the Class)

57.     Plaintiff repeats and realleges each and every allegation set forth above.

58.     City failed to train and supervise its officials, employees and agents, including Officer Fody and John Doe and Jane Roe *et al.*, so as to prevent the false arrest and false imprisonment of Plaintiff and the Class members, which resulted in the violation of their rights under the Fourth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983.

59.     City's failure to train and supervise amounts to deliberate indifference to the rights of persons with whom Defendants came into contact, including Plaintiff and the Class members.

## FOURTH CLAIM FOR RELIEF

### (False Arrest)
### (On Behalf of Plaintiff Argyros Individually)

60.     Plaintiff repeats and realleges each and every allegation set forth above.

61.    The acts and conduct of Defendants constitute false arrest and false imprisonment under the laws of the State of New York. Defendants intended to confine Mr. Argyros and, in fact, confined him, and he was conscious of the confinement. In addition, Mr. Argyros did not consent to the confinement and the confinement was not otherwise privileged.

62.    Defendants were at all relevant times officers, employees and/or agents acting within the scope of their employment by the City and NYPD, which are responsible for their conduct.

63.    Pursuant to 28 U.S.C. §1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## FIFTH CLAIM FOR RELIEF

### (Malicious Prosecution)
### (On Behalf of Plaintiff Argyros Individually)

64.    Plaintiff repeats and realleges each and every allegation set forth above.

65.    The acts and conduct of Defendants constitute malicious prosecution under the laws of the State of New York and under the Fourth Amendment to the Constitution of the United States. Defendants commenced and continued a criminal proceeding against Plaintiff. There was actual malice and an absence of probable cause for the proceeding. In addition the proceeding terminated favorably to Plaintiff.

66.    Pursuant to 28 U.S.C. §1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## SIXTH CLAIM FOR RELIEF

### (Assault)
### (On Behalf of Plaintiff Argyros Individually)

67.    Plaintiff repeats and realleges each and every allegation set forth above.

14

68.     The Defendants, their officers, employees and/or agents, acting within the scope of their employment, intentionally, willfully and maliciously assaulted Plaintiff in that they had the real or apparent ability to cause imminent harmful and/or offensive bodily contact and intentionally did a violent and/or menacing act that threatened such contact to Plaintiff, and that such act(s) caused apprehension of such contact in Plaintiff.

69.     Pursuant to 28 U.S.C. §1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## SEVENTH CLAIM FOR RELIEF

### (Battery)
### (On Behalf of Plaintiff Argyros Individually)

70.     Plaintiff repeats and realleges each and every allegation set forth above.

71.     The Defendants, their officers, employees and/or agents, acting within the scope of their employment, intentionally, willfully and maliciously battered Plaintiff, when they, in a hostile and/or offensive manner grabbed and handcuffed Plaintiff without his consent and with the intention of causing harmful and/or offensive bodily contact to Plaintiff.

72.     Pursuant to 28 U.S.C. §1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## EIGHTH CLAIM FOR RELIEF

### (Negligent Hiring, Retention, Training, and Supervision)
### (On Behalf of Plaintiff Argyros Individually)

73.     Plaintiff repeats and realleges each and every allegation set forth above.

74.     City and its officials, employees and/or agents acting within the scope of their employment did negligently hire, retain, train, and supervise the individual Defendants, who were unfit for the performance of their duties on May 29, 2012, at the aforementioned

15

location.

75.     Pursuant to 28 U.S.C. §1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## DEMAND FOR JURY TRIAL

76.     Plaintiffs demand trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, the named plaintiff on behalf of himself and the members of the Class requests the following relief:

A.     Certification of this case as a class action maintainable under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) , or alternatively 23(a),(b) and (c)(4) on behalf of the proposed class, with the named plaintiff as representative of the Class; and the designation of Plaintiff's counsel of record as Class counsel.

B.     A declaratory judgment that Defendants violated the named plaintiff and Class members' rights under the Fourth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983, and Article I, Section 12 of the New York State Constitution, and violated the laws of the State of New York.

C.     An injunction preventing the City of New York and its employees from implementing Operation Lucky Bag or any similar operation.

D.     Damages awarded to the named plaintiff and Class members in an amount to be determined at trial against the City and the individual Defendants, jointly and severally, together with interest and costs.

E.     Punitive damages awarded to the named plaintiff and Class members in an amount to be determined at trial against the individual Defendants Officer Fody and John Doe and Jane Roe *et al.*, whose actions constituted outrageous conduct, were reckless, and showed a

callous indifference to and willful disregard of Plaintiff's and the Class members' rights as set forth above.

       F.     The cost of this action, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988.

       G.     Any further and different relief that this Court deems appropriate.

Dated: New York, New York
       May 16, 2013

SIEGEL TEITELBAUM & EVANS, LLP

by: _Norman Siegel_
Norman Siegel (NS 6850)

by: _Herbert Teitelbaum_
Herbert Teitelbaum (HT 7762)
Sharon Sprayregen (SS 1478)
260 Madison Avenue, 22nd Floor
New York, NY 10016
(212) 455-0300

CUTLER & PARLATORE, PLLC
by: _____
Timothy C. Parlatore (TP 2923)
260 Madison Avenue, 22nd Floor
New York, New York 10016
212-679-6669

McLAUGHLIN & STERN, LLP
by: _Alan Sash_
Alan Sash (AS 8804)
260 Madison Avenue
New York, NY 10016
(212) 448-1100

*Attorneys for Plaintiff*

17

# EXHIBIT

# A

## POLICE DEPARTMENT
## CITY OF NEW YORK

January 30, 2012

FROM:      Deputy Commissioner, Legal Matters

TO:        Chief of Patrol

### SUBJECT:   REVIEW OF OPERATION LUCKY BAG

      In light of recent court decisions that dismissed charges against defendants arrested as a result of Operation Lucky Bag, the Legal Bureau has been asked to review the conduct of these operations in order to ensure they are in compliance with existing law and to recommend changes so that arrests made pursuant to these operations can be properly prosecuted.

      Operation Lucky Bag is essentially a sting operation where an individual is presented with an opportunity to commit a larceny and upon committing this crime is arrested. Safeguards must be established to ensure that we can prove that a person who is arrested pursuant to this operation truly has the intent to commit a larceny as opposed to being engaged in innocent behavior.

      In the past, Operation Lucky Bag has often been conducted in such a way that a wallet, or a bag with an expensive item, such as a laptop, was left in a public place. Officers in a marked police car or uniformed officers on foot were posted nearby. If an individual picked up the item and walked past the police without turning the item over to the officers, the individual would be arrested and charged with petit larceny under the theory that the individual committed larceny by acquiring lost property. A review of existing law shows that this method of conducting Lucky Bag operations is not sufficient to establish that the perpetrator actually had the intent to commit a larceny.

      Pursuant to New York State Penal Law § 155.25, a person is guilty of petit larceny "when he steals property." New York State Penal Law establishes several different theories by which someone can commit a larceny. The theory that Operation Lucky Bag has relied on thus far is that of larceny by acquiring lost property. Pursuant to Penal Law § 155.05(2)(b), a person commits larceny by acquiring lost property when "he exercises control over property of another which he knows to have been lost or mislaid, or to have been delivered under a mistake as to the identity of the recipient or the nature or amount of the property, *without taking reasonable measures to return such property to the owner*." [Emphasis added].

There are two statutes that establish the "reasonable measures" that a person must take to return the property to the owner. The first statute is New York State Personal Property Law, Article 7B § 252(1), which states:

> [A]ny person who finds lost property of the value of twenty dollars or more or comes into possession of property of the value of twenty dollars or more with knowledge that it is lost property or found property shall *within ten days* after the finding or acquisition of possession thereof, either return it to the owner or report such finding or acquisition of possession and deposit such property in a police station or police headquarters of the city where the finding occurred...

The second statute is New York City Administrative Code § 10-106(a), which states:

> Any person who finds any lost money or property of or exceeding the value of ten dollars shall report such finding to and deposit such money or property in a police station house *within ten days* after the finding thereof.

In light of these laws, a person picking up property that they find cannot be charged with larceny simply because they fail to return the property to a police officer who is located near the site at the time that the property was found. The person finding the property has ten days to bring the property to the police. In order to conduct Lucky Bag operations that are consistent with existing law, we must establish that the person taking the property has the actual intent to steal it at the time they are taking it, as opposed to taking it and later turning it in. Therefore, some additional element must be used to establish that the person has the immediate intent to steal the property.

One way that we can establish that the person picking up the property has the intent to steal it is if we observe them remove the valuable portion of the property, such as the cash or credit cards in a wallet, and discard the rest of it. Another way we can establish that the person picking up the property has the intent to steal it is if we have a person in civilian clothes approach the person who picks up the property and state that they lost the property. They would then ask the perpetrator if they have seen it. If the perpetrator denies seeing the lost property, this would establish the intent to steal it.

Another effective method to establish a true intent on the part of the perpetrator to steal property is to conduct an operation where the perpetrator engages in a larceny by trespassory taking, as opposed to the larceny by acquiring lost property that is the basis of current Lucky Bag operations. One example of larceny by trespassory taking is to leave a vehicle unlocked or with a window open with property displayed inside the vehicle. Any individual going into the vehicle to remove the property would clearly not be behaving innocently. Another example would be to leave a bicycle locked against a pole or bike rack with a bag attached to the bicycle. There is no way that a reasonable person could conclude that someone taking property from the bicycle would be acting innocently.

Simply leaving property in a public place and arresting a person who picks it up if they do not immediately notify the police is in contravention of New York State law and does not establish that the person had the intent to commit a larceny. The Department should not conduct Lucky Bag operations of this nature.

For your information.

S. Andrew Schaffer
Deputy Commissioner
Legal Matters

SAS:KO